NOT RECOMMENDED FOR PUBLICATION
File Name: 24a0515n.06

No. 23-5319

# UNITED STATES COURT OF APPEALS
# FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| KEMARI AVERETT, | ) | |
| Plaintiff-Appellant, | ) ) ) | **FILED**<br>Dec 11, 2024<br>KELLY L. STEPHENS, Clerk |
| v. | ) ) | |
| SHIRLEY ANN HARDY, Student Conduct Officer; ANGELA B. TAYLOR, Assistant Dean of Students; MICHAEL MARDIS, Dean of Students and Vice Provost for Student Affairs, Employees and administrators of the Code of Student Conduct, individually and in their official capacities; UNIVERSITY OF LOUISVILLE; BOARD OF TRUSTEES OF THE UNIVERSITY OF LOUISVILLE; WILLIAM BROWN, Detective, | ) ) ) ) ) ) ) ) ) ) ) ) ) | ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF KENTUCKY<br><br>OPINION |
| Defendants-Appellees. | ) ) | |

Before: GIBBONS, McKEAGUE, and STRANCH, Circuit Judges.

PER CURIAM. The University of Louisville suspended Kemari Averett after a student conduct hearing panel found he engaged in sexual misconduct in violation of the University's Code of Student Conduct. Averett filed this lawsuit, alleging that various University actors violated his constitutional due process rights in the misconduct investigation and hearing. The district court dismissed Averett's claims against some Defendants and granted summary judgment for another. We **AFFIRM**.

## I.   BACKGROUND

### A.   Factual Background

In August 2018, Averett was a student at the University of Louisville.  Early in the morning on August 14, Destinee Coleman, another student, met Averett at his off-campus apartment, and the two had sex.  About two months later, on October 8, Coleman reported the incident to Shirley Hardy, the University's Student Conduct Officer, claiming that the sex was non-consensual.

As Student Conduct Officer, Hardy was responsible for impartially and equitably investigating student complaints of sexual misconduct, discrimination, and harassment.  Hardy was also responsible for meeting with accused students, resolving cases, tracking sanctions imposed by other bodies, and updating case files.

On the day that Coleman reported Averett, Hardy called Averett and left him a voice message.  A few days later, on October 10, Hardy met with Averett, and told him that Coleman had accused him of sexual assault in violation of the Code of Student Conduct.  The next time Hardy spoke to Averett, on October 25, she informed Averett that the University would be moving forward with a conduct board hearing against him based on Coleman's allegations.  On November 2, Hardy emailed Averett a letter explaining the University's charges against him for violating the Code of Student Conduct, and Averett received the letter on the same day.  The letter contained the logistical details of the hearing, including its time and date, location, hearing procedures, and instructions for reporting to the hearing.

Around this time, Averett experienced other problems with law enforcement officers.  On October 15, he was arrested for an incident in which he allegedly pointed a gun at a woman and threatened her, after which the University suspended Averett and prohibited him from entering campus.  University of Louisville police, through Detective William Brown, had also launched a

criminal investigation into Coleman's allegations that Averett raped her, completely separate from Hardy's investigation.

The procedures for the student conduct hearing were set out in the Code of Student Conduct. Before the hearing, the students involved were responsible for collecting their own evidence and presenting witnesses and written statements from witnesses, which the hearing officer, here Hardy, would review to determine whether "appropriate for inclusion in the hearing." At the hearing, students could question their own witnesses, and cross-examine the other student's witnesses "either through the hearing officer or directly as deemed appropriate by the hearing officer." Students were allowed to have counsel present to advise them, but counsel could not cross-examine witnesses. A hearing panel including a student, staff member, and professor would observe the hearing, make findings by a preponderance of the information, and recommend sanctions to the Assistant Dean of Students, Angela Taylor.

The University scheduled Averett's hearing for November 12. On November 6, Hardy had a prehearing call with Averett and emailed him the University's evidence that Coleman had provided to Hardy as of that time. In the days between then and the hearing, Coleman provided to Hardy additional evidence and named witnesses that she planned to call at the hearing on a rolling basis, providing some evidence as late as the night before the hearing. Hardy gave the final package of evidence to Averett on the day of the hearing, and Averett and his counsel had at least twenty minutes to review it.

On the morning of the hearing, Averett submitted a written statement of his defense to Hardy to be read at the hearing in which he described past sexual encounters with Coleman. Within 20 minutes, the University's Title IX coordinator, Brian Bigelow, reviewed Averett's statement

for relevancy, and told Hardy that Averett must redact his statements about his past sexual encounters with Coleman, which Hardy relayed to Averett.

Later that day, the hearing proceeded with Hardy acting as the facilitator, an administrative role in which she governed the procedural flow of the hearing by organizing witnesses, giving each party and the hearing panel a chance to question witnesses, and allocating time for closing statements. Hardy was not on the three-member student conduct hearing panel. Both Averett and Coleman brought an attorney to act as an advisor at the hearing. Coleman called four witnesses which Averett cross-examined. Averett did not call any witnesses, but he did testify in his own defense.

On November 15, the hearing panel issued findings of facts and recommendations to Assistant Dean Taylor in which it found by a preponderance of the information that Averett had nonconsensual sexual intercourse with Coleman in violation of the Code of Student Conduct. Taylor concurred with the findings and suspended Averett. Averett appealed that decision to the Dean of Students and Vice Provost, Michael Mardis, and Mardis concurred with Taylor and the hearing panel.

## B. Procedural History

Three months after his suspension, Averett filed this 42 U.S.C. § 1983 lawsuit, charging various University actors with violating his constitutional procedural due process rights and Title IX rights. *See* 42 U.S.C. § 1983; 20 U.S.C. § 1681. The Second Amended Complaint, the operative complaint in this action, asserted these claims against the University of Louisville, the University of Louisville Board of Trustees, Angela Taylor (Assistant Dean of Students), Michael Mardis (Dean of Students and Vice Provost for Student Affairs), and Detective William Brown (together, "the University Defendants"). Averett also asserted these claims against Student

Conduct Officer Hardy, alleging that Hardy violated his due process rights by failing to provide some of the evidence against him until the day of the hearing and that Hardy was biased because she was both the investigator and Averett was "tried before" her. Separately, Averett asserted various state law defamation claims against Hardy, Taylor, Mardis, and Coleman and intentional infliction of emotional distress claims against Brown and Hardy.

The University Defendants and Hardy filed a motion to dismiss Averett's claims against them, which the district court largely granted, dismissing the claims on sovereign immunity grounds and, otherwise, for failure to state a claim. The court denied Hardy's motion to dismiss Averett's due process claims, finding that, at the motion to dismiss stage, the allegations that Hardy withheld hearing evidence from Averett and created bias against him plausibly alleged due process violations. The district court did, however, grant Hardy's motion to dismiss as to all other claims against her, finding that Averett failed to state a claim on which relief could be granted for those claims.

At the close of discovery, Hardy filed a motion for summary judgment, which the district court granted in full. Averett stipulated to dismissal of all remaining claims in the action against Coleman, rendering the action final and appealable. Averett now appeals both the district court's dismissal of his claims against the University Defendants and Hardy and the grant of summary judgment on his due process claims against Hardy.

## II.   ANALYSIS

A district court's grants of motions to dismiss and motions for summary judgment are reviewed de novo. *Keys v. Humana, Inc.*, 684 F.3d 605, 608 (6th Cir. 2012); *Tepper v. Potter*, 505 F.3d 508, 513 (6th Cir. 2007). At the motion to dismiss stage, the pleadings are read in the light most favorable to the plaintiff, accepting the plaintiff's factual allegations as true. *Keys*, 684 F.3d

at 608. The plaintiff's factual allegations must "state a claim to relief that is plausible on its face," such that if the facts alleged do not support an inference of unlawful conduct, a motion to dismiss will succeed. Fed. R. Civ. P. 12(b)(6); *Bell Atlantic v. Twombly*, 550 U.S. 544, 555, 570 (1955).

Summary judgment is proper when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). A genuine dispute of material fact exists if, taking the evidence in the light most favorable to the non-moving party and drawing all reasonable inferences in that party's favor, "a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Parties must go "beyond the pleadings" in advancing, or defending against, a summary judgment motion. 10A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2721 (4th ed. June 2024 Update). Ultimately, the court must "examine the pleadings to ascertain what issues of fact they present and then consider the affidavits, depositions, admissions, interrogatory answers and similar material to determine whether any of those issues are real and genuine." *Id.*

Averett's filings fail to meet the standards of this court. He filed only one brief that, if read favorably, challenges the district court's dismissal of all claims against the University Defendants and the grant of summary judgment to Hardy on the due process claims against her. The 14-page body of the brief includes a mere two pages of legal arguments. Despite having completed fact discovery, Averett's Statement of the Case in his brief cites only to his original complaint, the case assignment to the district court judge, and the summons entered in the district court record. Averett's original complaint was superseded by the operative Second Amended Complaint, and the case assignment and summons are entirely irrelevant to his arguments on appeal. Counsel failed to file a reply brief even after receiving four extensions.[1]

---

[1] Counsel explained that the reason for these extensions was a near fatal automobile accident.

In sum, counsel's performance "falls short of the obligations owed by a member of the bar[.]" *In re Ruben*, 825 F.2d 977, 984 (6th Cir. 1987). Counsel's performance is certainly disappointing and arguably sanctionable, but we refrain from taking such drastic measures and instead issue this warning and proceed to the merits.

### A. Motion to Dismiss

Averett raises only one argument on the dismissed claims—that the district court wrongly dismissed his claims against the University Defendants because it incorrectly read Averett's complaint as failing to plead that he was suing the University Defendants in their individual and official capacities. Averett appears to suggest that, had the district court construed his claims as brought against the University Defendants in both capacities—as opposed to just their official capacities—some would have survived the motion to dismiss under the Rule 12(b)(6) pleading standards.

Averett misreads the district court's decision under Rule 12(b)(6). *See* R. 55, Mem. Op., PageID 616. The court held that some of Averett's claims against the University Defendants were barred by the Eleventh Amendment. *Id.* at PageID 625; *see Hutsell v. Sayre*, 5 F.3d 996, 999 (6th Cir. 1993). It reasoned that the University, as a state institution, and the individual University Defendants sued in their official capacities, enjoy sovereign immunity because they are alter egos of the state. R. 55, Mem. Op., PageID 620, 625.

While noting that it was "not clear from the second amended complaint whether Averett also assert[ed] claims against Hardy, Taylor, and Mardis in their individual capacities for the alleged due-process violation," the district court chose to "draw every plausible inference in Averett's favor and [] therefore evaluate whether he has alleged facts that could plausibly entitle him to relief for a violation of the Due Process Clause." *Id.* at PageID 625. The court analyzed

the claims for damages against Hardy, Taylor, Mathis, and Brown—claims that it could analyze against those Defendants only in their individual capacities. *See Hutsell*, 5 F.3d at 1003. Accepting Averett's pled facts as true, it held that those facts did not plausibly support an inference of unlawful conduct as to Taylor, Mathis, and Brown. Further, the district court denied Hardy's motion to dismiss as to the due process claims against her because Averett alleged that Hardy had "sat on the panel that recommended Averett's expulsion," which, assumed as true, could plausibly give rise to unlawful bias in his hearing. R. 55, PageID 629. Again, the district court could allow this claim to move forward only by assuming that it was pled against Hardy in her individual capacity—such a claim as pled against Hardy in her official capacity would have been barred by the Eleventh Amendment. *See Hutsell*, 5 F.3d at 999.

Averett failed to challenge the district court's dismissal of his claims against Taylor, Mathis, and Brown in their individual capacities in this appeal. A party's omission of an argument gives rise to forfeiture, and we need not consider the argument. *See Island Creek Coal Co. v. Wilkerson*, 910 F.3d 254, 256 (6th Cir. 2018) ("Time, time, and time again, we have reminded litigants that we will treat an 'argument' as 'forfeited when it was not raised in the opening brief.'" (quoting *Golden v. Comm'r.*, 548 F.3d 487, 493 (6th Cir. 2008)).

Because the district court properly dismissed some of Averett's claims against the University Defendants as barred by the Eleventh Amendment and considered the individual capacity claims by correctly applying the Rule 12(b)(6) standard, we affirm the district court's dismissal of Averett's claims against the University Defendants.

## B.     Summary Judgment

Averett next argues that the district court opinion (without citing which opinion) erred in granting judgment to Hardy on the basis that her actions did not violate his due process rights.

Averett's summary of the argument regarding Hardy is inexplicable but appears to rely on the district court opinion's acceptance of Averett's pled facts when ruling on the Defendants' motion to dismiss. At issue, however, is the summary judgment stage.

The Fourteenth Amendment's Due Process Clause requires states to provide individuals with due process before depriving them of liberty or property interests, and students are owed these constitutional procedural due process rights in higher education disciplinary decisions that may result in suspension. *Doe v. Mia. Univ.*, 882 F.3d 579, 599 (6th Cir. 2018). To determine whether a higher education disciplinary hearing satisfies due process, we evaluate three factors: (1) the private interest that will be affected by the action; (2) the risk of an erroneous deprivation of the procedures applied and the value of any additional procedures; and (3) the government's interest in the hearing, including in preserving government resources. *See id.* at 600; *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976). In light of these factors, a student facing a higher education disciplinary decision is owed notice of the charges against him, an explanation of the evidence against him, and an opportunity to present his side of the story to an unbiased decisionmaker. *Mia. Univ.*, 882 F.3d at 600 (citing *Doe v. Univ. of Cincinnati*, 872 F.3d 393, 406 (6th Cir. 2017)).

Averett's appellate brief, under Summary of the Argument, contains two arguments labeled Section "**B.**," both of which he summarily addresses in a one-page argument. *See* Appellant's Br. 11, 13. Both arguments fail, because they assume incorrect facts. In the first "**B.**" argument, Averett concludes that Hardy was impermissibly biased because she was "solely responsible" for the hearing. His one-page argument is based on the district court's first decision at the motion to dismiss stage, which accepted the allegation that Hardy "sat on the panel that recommended Averett's expulsion." R. 55, PageID 629. The motion to dismiss order makes no findings—it merely accepts Averett's pleading allegations. At the summary judgment stage,

however, the district court found that Averett's "brief didn't point to any record evidence raising a plausible suggestion of bias," because, in fact, the record shows that Hardy was not one of the three members of the student conduct hearing panel that determined Averett's responsibility or sanctions for his misconduct, nor did she act in a traditionally prosecutorial role at the hearing. R. 194, Mem. Op., PageID 2634.; s*ee Mia. Univ.*, 882 F.3d at 601. Because Averett's bias argument in his appellate brief on appeal makes no other factual argument and lacks citations to the evidentiary record, his bias-based due process claim fails.

Averett's second "**B.**" conclusion is that Hardy's investigation did not comply with the Student Code of Conduct's proscribed procedures for investigating a charge of sexual assault, once again basing his argument on the district court's acceptance at the motion to dismiss stage of his pled fact that Hardy "intentionally failed to provide him with accessible critical evidence in violation of its own policies." R. 55, PageID 628. In granting Hardy summary judgment on Averett's due process claims, the district court explained that the record shows Hardy's investigation comported with the Student Code of Conduct's procedures. For example, the district court explained that Hardy's provision of evidence on the same day of the hearing comported with procedures in the Student Code of Conduct. We agree. Averett has not cited to any part of the record, other than his first, inoperative complaint, supporting his allegation that Hardy deviated from the Student Code of Conduct's investigative procedures. The district court thus properly granted Hardy summary judgment on the due process claims raised here.

In its summary judgment decision, the district court addressed arguments Averett made that Hardy violated his due process rights by not providing sufficient notice of the charges against him, withholding evidence, and not informing him of his right to consult with legal counsel about

the hearing. Averett did not raise any of these arguments on appeal, so we need not evaluate them now. *See Island Creek Coal Co.*, 910 F.3d at 256.

### III.   CONCLUSION

For these reasons, we **AFFIRM** the judgments of the district court.